**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**JOSHUA DAVIS**   **PLAINTIFF**

**v.**   **CIVIL ACTION NO. 3:03-cv-740-W-S**

**AUTOZONE, INC. and DARYL DELMAS**   **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW BEFORE THE COURT is the Motion for Summary Judgment of the defendants, AutoZone, Inc. and Darryl Delmas.

The parties have had a full opportunity to conduct discovery, take depositions, and interview witnesses and take statements in this matter. The discovery period has now expired.

After reviewing the defendants' motion and memoranda in support, the plaintiff's response, the pleadings and all applicable exhibits and other evidence, this court heard oral argument on this matter at which time all parties appeared and argued the motion. This court is of the opinion that the defendants' motion is well taken and should be granted in its entirety. Accordingly, this court makes the following findings.

**BACKGROUND**

Plaintiff, Joshua Davis, a black male, was hired by AutoZone on April 13, 1992, as a sales person at the store on Terry Road in Jackson, Mississippi.[1] He worked in various positions

---

[1] Mississippi Employment Security Commission Board of Review, Decision of Appeals Referee, January 3, 2003, Complaint, Exh. A-4; Davis Deposition, p.40., Motion for Summary Judgment, Exh. 3.

and at various locations in Mississippi, Tennessee and Ohio.[2]  Upon returning to Mississippi, plaintiff worked in the position of store manager in Canton, Mississippi, for about one year and then managed a store in Greenwood, Mississippi, for about eighteen months.[3]  Plaintiff then went to his final location of employment with AutoZone, the store on Ellis Avenue in Jackson, Mississippi, where he worked as store manager for about two years until the time the incidents giving rise to his termination occurred.[4]

On or about October 8, 2002, Torrence McGruder, a female employee in plaintiff's store, complained to AutoZone management that plaintiff had engaged in inappropriate conduct on the evening of October 8, 2002.[5]  The next day, Randy Day, the region's Loss Prevention Manager, interviewed McGruder and obtained a statement from her.[6]  In addition to allegations of inappropriate statements and touching by plaintiff, McGruder also reported that plaintiff had displayed an interest in and favoritism towards Yolanda Bishop, a female employee who previously had been the commercial driver in plaintiff's store.[7]  Day continued to investigate and on October 17, 2002, obtained a statement from Bishop, who admitted having a personal relationship with plaintiff while she and the plaintiff both worked at the Ellis Avenue Auto

---

[2] Davis Deposition, pp.40-52.

[3] Id.

[4] Id.

[5] Declaration of Randy Ray, Motion for Summary Judgment, Exh. 3.

[6] Id.; Statement of Torrence McGruder, Motion for Summary Judgment, Exh. 3-A.

[7] Id.

Zone.[8]  Day interviewed two additional employees, Latoya Phillips and Andrew Pickering, whose statements, taken on October 11, 2002, corroborated a personal relationship between plaintiff and Bishop.[9]  After interviewing Bishop, Phillips and Pickering, Day also interviewed the plaintiff, who denied the allegations.[10]

Day presented the statements to Darryl Delmas, the Regional Manager who is a white male, and Antonio Smith, AutoZone's Regional Human Resources Manager who is a black male.[11]  Delmas and Smith consulted with the AutoZone employee relations department and Demerick Harris, plaintiff's immediate supervisor who is a black male.[12]  AutoZone says that based upon Bishop's admission, and the corroborative evidence in the McGruder, Pickering and Phillips statements, Delmas, Smith, Harris, and the AutoZone employee relations department all concluded that plaintiff had violated the personal relationship policy.[13]  Delmas determined that plaintiff's denial was not credible and that plaintiff had not been candid during the investigation.[14]  As regional manager, Delmas made the ultimate decision to terminate Davis.[15]  Accordingly, AutoZone terminated plaintiff for violating the relationship policy and for failing to

---

[8] Declaration of Randy Ray; Statement of Yolanda Bishop, Motion for Summary Judgment, Exh. 3-D.

[9] Declaration of Randy Ray; Statement of LaToya Phillips, Motion for Summary Judgment, Exh. 3-B; Statement of Andrew Pickering, Motion for Summary Judgment, Exh.3-C

[10] Declaration of Randy Ray; Statement of Joshua Davis, Motion for Summary Judgment, Exh. 3-E.

[11] Declaration of Randy Ray; Declaration of Darryl Delmas, Motion for Summary Judgment, Exh. 2

[12] Declaration of Darryl Delmas

[13] Id.

[14] Id.

[15] Id.

be candid.[16]  Plaintiff was discharged on October 31, 2002.[17] AutoZone replaced plaintiff with James Smith, a black male.[18]

AutoZone prohibits both sexual harassment and inappropriate relationships between employees.[19]  Those prohibitions are contained in policies that are distributed to employees in the employee handbook.[20]  Plaintiff had received a copy of the handbook and was aware of the policies in the handbook.[21]  The relationship policy prohibits supervisors from dating subordinates.[22]  AutoZone says it strictly enforces the relationship policy.[23]  AutoZone has terminated twenty-five supervisors between 2000 and 2004 for violation of the relationship

---

[16]Id.

[17]Decision of Appeals Referee, Complaint, Exh. A-4.

[18]Id.

[19]Declaration of Timothy P. Harrison, attorney in the AutoZone employee relations department, Motion for Summary Judgment, Exh. 4.

[20]Id.

[21]Davis deposition, p. 54.; Statement of Receipt and Acknowledgement of the AutoZone employee handbook, Motion for Summary Judgment, Exh.11.

[22]The Personal Relationships Policy, Motion for Summary Judgment, Exh. 4-A, states in part:

> Managers and supervisors may not enter into dating or personal/social relationships with AutoZoners with whom they have a direct or indirect reporting relationship.

. . . .

> Failure to follow the [personal relationships policy] is considered a serious violation and is justification for immediate termination.

Bishop worked at the Ellis Avenue location from around March 2001 to July 2002. Statement of Yolanda Bishop. Davis was the manager at the Ellis Avenue store for about a two-year period, ending in October 2002, that included the period of time Bishop worked. Davis Deposition, pp.51-52.

[23]Declaration of Timothy P. Harrison.

policy.[24]

On November 22, 2002, plaintiff filed a sole charge of gender discrimination with the Equal Employment Opportunity Commission ("EEOC").[25] Plaintiff filed for bankruptcy on January 6, 2003.[26] Plaintiff declared, under penalty of perjury, that he was not a party to any suits or administrative proceedings.[27] Plaintiff also declared that he had no "contingent and unliquidated claims of any nature."[28] The EEOC issued a right-to-sue notice on March 18, 2003.[29] The court discharged plaintiff's debts on April 30, 2003.[30]

The plaintiff, pro se, filed suit in this court against AutoZone and Demas on May 27, 2003.[31] Plaintiff says AutoZone discharged him in retaliation for filing a discrimination lawsuit against the company in 1998 alleging wrongful demotion.[32] In 2000, Plaintiff says AutoZone treated him differently from Rodney Robbins, a white male, in that they both worked a considerable distance from their homes, and AutoZone paid Robbins for mileage but denied

---

[24] Declaration of Timothy P. Harrison; Payroll Termination Reports, Motion for Summary Judgment, Exh. 4-B.

[25] Charge of Discrimination, Exh. to Complaint.

[26] Davis deposition, p.20; Notice of Bankruptcy and of Automatic Stay, Motion for Summary Judgment, Exh. 5.

[27] Summary of Schedules, Motion for Summary Judgment, Exh. 5.

[28] Id.

[29] Notice of Right to Sue, Exh. to Complaint.

[30] Discharge of Debtor, Motion for Summary Judgment, Exh. 5.

[31] Complaint.

[32] Complaint, ¶ 7; Davis Deposition, pp.45-48.

plaintiff's request for mileage.[33] Plaintiff alleges that in terminating him for violation of the relationship policy, AutoZone held him to a different standard than black female store manager Torrence McGruder who often had lunch with her male employees and white male Delmas who had meals with Torrence McGruder and had been given a birthday cake by an employee.[34] Plaintiff asserts that in 1985, prior to plaintiff's upcoming transfer to a Memphis, Tennessee, store, Delmas attempted to demote plaintiff because Delmas did not want to send plaintiff to Memphis as management.[35] Plaintiff also alleged that while Delmas was regional manager of the Jackson region, from February 2002 to February 2004, he did not select black males for the "President Club" award and only had one black male district manager.[36]

Plaintiff asserts claims of gender discrimination, race discrimination and retaliation under Title VII of the Civil Rights, Title 42 U.S.C. § 2000e *et seq*. He also asserts state law claims for intentional infliction of emotional distress, intentional interference with an employment contract, and negligent misrepresentation. Plaintiff seeks $100,000 in actual damages and $100,000 in punitive damages.

This court has federal question jurisdiction of plaintiffs' Title VII claims under Title 28 U.S.C. § 1331.[37] This court has supplemental jurisdiction of plaintiffs' state law claims under

---

[33] Complaint, ¶ 8.

[34] Complaint, ¶¶ 4, 5.

[35] Complaint, ¶ 9.

[36] Complaint, ¶ 6; Declaration of Darryl Delmas.

[37] Title 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Title 28 U.S.C. § 1367.[38] As to the state law claims, this court will apply the substantive law of Mississippi. *Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." F.R.C.P. 56(a). This court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by either citing to particular parts of materials in the record or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1). This court need consider only materials cited by the parties. Rule 56(c)(3).

Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2252, 91 L. Ed. 2d 265 (1986).

The moving party need only "show," meaning "point out to the district court," that there is an absence of evidence in support of one or more elements essential to the plaintiff's claims. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. "If the moving party meets the initial burden of

---

[38]Title 28 U.S.C. § 1367 states that "(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.), *cert. denied*, 516 U.S. 818, 116 S. Ct. 76, 133 L. Ed. 2d 35 (1995) (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553).

## ANALYSIS

**I.  Judicial Estoppel as to All Claims**

Defendants submit that summary judgment in their favor is proper on all claims because the plaintiff failed to disclose his claims in this suit as a potential asset to the bankruptcy court and, therefore, his claims are barred by the doctrine of judicial estoppel. This Court agrees. "Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). The doctrine serves to "prevent[] parties from playing fast and loose with the courts to suit the exigencies of self interest." *Coastal Plains*, 179 F.3d at 205.

Pursuant to the Bankruptcy Code, a debtor is required to list all of his assets when seeking to have his debts discharged through bankruptcy. This requirement includes an obligation to list any potential legal claims — including claims for money damages of the type asserted in this lawsuit. Title 11 U.S.C. § 521(1)[39]; *Coastal Plains*, 179 F.3d at 207-08. "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *Coastal Plains*, 179 F.3d at 208 (citation omitted). "The courts will not

---

[39] Title 11 U.S.C. § 521(1)(a)(1)(B)(i) states in pertinent part that "[t]he debtor shall file, unless the court orders otherwise, a schedule of assets and liabilities. . ."

permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding." *Id.* (citation omitted). Failure to list legal claims as assets can act as a bar to maintaining such claims later under the theories of judicial estoppel and/or lack of standing. *Id.*

"The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that [he] may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Id.* (citation omitted). "Any claim with potential must be disclosed, even if it is contingent, dependent or conditional." *Id.* As the Fifth Circuit has explained:

> *. . . the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.* The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own interest in a separate proceeding.

*Id.* (emphasis in original).

In the case at bar, plaintiff's summary of schedules specifically inquires about whether he had any legal claims to be identified. Aware that he had filed a charge of discrimination in November 2002, plaintiff failed to identify the claims now brought in this lawsuit when he filed for bankruptcy in January 2003. Plaintiff signed the schedules under penalty of perjury attesting that the information contained therein was true and correct. Therefore, based upon the facts and controlling precedent, this court finds that plaintiff is now judicially estopped from proceeding with his federal discrimination and state law tort claims. Judgment in defendants' favor is proper. While this finding alone is sufficient to dismiss the Complaint in its entirety with prejudice, this court will address the plaintiff's claims and make further findings as follows.

**II.     Title VII Claims as to Delmas**

The charge of discrimination provides the scope for what person or entities can be sued under Title VII. *See Lewis v. Hardy*, 248 Fed. Appx. 589, 593 (5th Cir. 2007) (stating that the EEOC right-to-sue notice authorizes plaintiff to file suit against only the person(s) named as respondent(s) in the charge of discrimination). Title VII claims brought against a defendant that is not named in the charge of discrimination must be dismissed. *See Id.*

Plaintiff's charge of discrimination only names AutoZone. It does not name Delmas. Therefore, all of plaintiff's Title VII claims – race discrimination, retaliation, and gender discrimination – are dismissed with respect to Delmas.[40]

**III.    Race Discrimination and Retaliation**

Courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir. 1994). The allegations in the EEOC charge, or as enlarged by the EEOC's investigation, "fix[] the scope of the charging party's subsequent right to institute a civil suit." *Id.* at 711-12 (5th Cir. 1994).

In total, plaintiff's charge alleges:

I was hired April 1992. I became a Store Manager in 1997. I was discharged October 31, 2002.

[Management] told me I was discharged because I violated the personal

---

[40] This court notes that supervisors can be sued under Title VII as employers when the supervisor had an employer's rights, such as hiring and firing, and when the supervisor was acting in an official capacity. *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990). This court need not address whether Delmas can be sued as an employer under Title VII since plaintiff did not file a charge against Delmas. Moreover, inasmuch as plaintiff has no viable claims under Title VII, *infra*, plaintiff would have no viable claims against Delmas even if he could be sued as a supervisor under Title VII.

> relationship policy and loss of confidence.
>
> I believe I was discriminated against because of my sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended since:
>
> A. I deny that I violated the company policy.  A female store manager was not discharged when she went to lunch with an employee.

In addition, while plaintiff had the option to mark race and retaliation, he only marked "sex" as a cause of discrimination in the charge.  There is nothing in the record to suggest that the EEOC investigation enlarged the scope of plaintiff's charge.

Plaintiff's charge of discrimination limits the scope of his complaint. As the charge filed by plaintiff is limited to a claim of gender discrimination in connection with his termination, plaintiff's additional claims asserted under Title VII for race discrimination and retaliation are barred as a matter of law. Summary judgment in defendants' favor on these claims is proper. The claim for gender discrimination is the only claim that remains under Title VII.

## IV.     Gender Discrimination

A gender discrimination case proceeds as follows. First the plaintiff must establish a prima facie case. To establish a *prima facie* case of discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he was discharged; and (4) (a) similarly situated employees outside the protected class were treated more favorably or (b) he was replaced with a person who is not a member of the protected class. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973)); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). Then the burden shifts to the employer to articulate a legitimate nondiscriminatory reason. *Urbano*, 138 F.3d at 206. After the employer meets that burden , the

plaintiff has an opportunity to show that the reason offered is pretextual. *Id.* At this point, the court proceeds to consider the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against him because of his gender. *Id.* (citation omitted). Failure to establish a prima facie case is fatal to a discrimination claim facing summary judgment. *Davis*, 14 F.3d at 1088.

Defendants concede that plaintiff meets the first and third elements of the *prima facie* case – namely that he was within a protected class at the time of his termination and that he was terminated – and do not dispute the second element – that he was qualified for the position he held. The defendants contend, however, and this court agrees, that plaintiff falls short of establishing the fourth element of the *prima facie* case because he cannot prove that he was ultimately replaced by a female or that he was treated less favorably than similarly-situated female employees.

First, plaintiff cannot show that he was replaced by someone outside the protected class. It is undisputed that plaintiff was replaced by James Smith, a black male. Further, plaintiff has failed to provide evidence to establish that a similarly situated employee outside the protected class was treated more favorably. "In disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (citation omitted). Plaintiff lists several female employees whom plaintiff alleges AutoZone treated differently.[41] None is a sufficient comparator because plaintiff has presented neither argument nor evidence to establish that any one of the female employees he names had been found: (1) to have acted in violation of

---

[41]Plaintiff lists Donah Denson, Latonya Carter, Yolanda Bishop, and Torrence McGruder.

AutoZone's policy, or in some other circumstance where AutoZone normally terminates an employee; and (2) to have been untruthful with AutoZone during an investigation. Plaintiff has failed to establish a prima facie case.

Even if plaintiff had established a prima facie case, AutoZone has offered a legitimate, nondiscriminatory reason for terminating plaintiff. AutoZone relied upon statements from four employees – McGruder, Bishop, Phillips and Pickering – in making the determination that plaintiff had violated AutoZone's relationship policy and had failed to be truthful with AutoZone during its investigation. Bishop also later signed a sworn affidavit attesting to the veracity of her statement and re-confirmed that she had a personal relationship with plaintiff which continued until shortly after his termination.[42] AutoZone offered, in support of its reason, the termination records of twenty-five supervisors who were terminated between 2000 and 2004 due to violation of the relationship policy.

Plaintiff has failed to establish his *prima facie* case. AutoZone has offered a legitimate, non-discriminatory reason, and plaintiff has not rebutted that reason with evidence that AutoZone's reason for terminating him was actually discriminatory. *See Hervey v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865 (5th Cir. 2010) (citing *Laxton v. Gap Inc.*, 333 F.3d 572 (5th Cir. Tex. 2003) and *Rubinstein v. Administrators of the Tulane Educ. Fund*, 218 F.3d 392 (5th Cir. 2000) (summary judgment is proper for employer whether the offered reason is accurate or not and even where there is some evidence of pretext if there is overall lack of evidence of discriminatory intent)). Summary judgment, then, in defendants' favor is warranted on plaintiff's claim of gender discrimination.

---

[42]Statement of Yolanda Bishop, February 14, 2003, Plaintiff's Response, Exh. 6.

### V.  Negligent Misrepresentation

Plaintiff asserts a claim for negligent misrepresentation against the defendants.  In order to establish negligent misrepresentation, the following elements must be proven by a preponderance of the evidence: "(1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance." *Crowley v. Adams & Edens, P.A.*, 731 F. Supp. 2d 628, 635 (S.D. Miss. 2010) (citing *Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 461 (Miss. 2007)). Plaintiff has presented no evidence to establish any of the elements of negligent misrepresentation and does not address this claim in his response. Accordingly, there is no genuine dispute as to the claim of negligent misrepresentation, and summary judgment is warranted.

### VI.  Intentional Infliction of Emotional Distress

Plaintiff also alleges intentional infliction of emotional distress ("IIED").  The jurisprudence confirms that meeting the elements for a claim of IIED is a "tall order." *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001).  In the employment context in Mississippi, the necessary severity of the defendants' conduct requires acts "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Scott*, 78 So. 2d at 630 (citing *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)).

Plaintiff has not met the requirements for establishing an IIED claim.  Defendants

conducted an internal company investigation and terminated plaintiff based on the result. Accordingly, the court finds that summary judgment in defendants' favor is warranted with respect to the claim of IIED.

## VII.    Intentional Interference With Employment

Finally, summary judgment also is warranted on plaintiff's state law claim for intentional interference with employment. Mississippi recognizes intentional interference with employment even in the context of an employee's at-will relationship. *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999). An action for tortious interference with employment ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party. *Id.* The elements of tortious interference with a contract include: 1) the acts were intentional and willful; 2) that they were calculated to cause damages to the plaintiffs in their lawful business; 3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred. *Id.* at 760-61. This tort requires a showing that one has intentionally and improperly interfered with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract. *Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985). Moreover, an interference is privileged and not wrongful and actionable if undertaken by someone in the exercise of a legitimate interest or right. *Gillespie v. City of Macon*, 485 F. Supp. 2d 722, 731 (S.D. Miss. 2007) (citing *King's Daughters and Sons Circle Number Two of Greenville v. Delta Regional Medical Ctr.*, 856 So.2d 600, 604 (Miss. App. Ct. 2003)).

Plaintiff is incapable of meeting the prerequisites of this claim in this context, under these

circumstances. Summary judgment is proper and is granted as to this claim.

## **CONCLUSION**

In light of the foregoing findings, it is the ruling of this court that summary judgment in defendants' favor on all claims is warranted and plaintiff's Complaint is dismissed in its entirety, with prejudice. This court will file a final judgment.

SO ORDERED, this 1st day of October, 2011.

           s/HENRY T. WINGATE
           UNITED STATES DISTRICT JUDGE


Civil Action No. 3:03-cv-740 WS
Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment